Citation Nr: 1550113 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 14-36 669 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for diabetes mellitus, to include as due to exposure to herbicides. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

H.W. Walker, Counsel

INTRODUCTION

The Veteran served on active duty from March 1958 to July 1979. 

This case comes before the Board of Veterans' Appeals (Board) on appeal of a June 2014 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma, which denied the benefit on appeal.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran did not have service, or other duty or visitation, in the Republic of Vietnam, and the preponderance of the competent evidence is against a finding that he was exposed to Agent Orange or other herbicide agents during his period of service, to include his service at Ubon Royal Thai Air Force Base (Ubon Air Base).

2. Diabetes mellitus was not first manifested during active duty or within one year of the Veteran's separation from service, and the preponderance of the evidence is against a finding that the current disability is related to military service, to include alleged herbicide exposure therein.


CONCLUSION OF LAW

Diabetes mellitus was not incurred in or aggravated by the Veteran's active duty service, nor may it be presumed to have been incurred in or aggravated by such service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).
REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (finding that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claims, the VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the Veteran and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the Veteran is expected to provide; and (4) request that the Veteran provide any evidence in his or her possession that pertains to the claim. The requirement of requesting that the Veteran provide any evidence in his possession that pertains to the claim has been eliminated by the Secretary. See 73 Fed. Reg. 23353 (final rule eliminating fourth element notice as required under Pelegrini II, effective May 30, 2008). Thus, any error related to this element is harmless. 

VCAA letters dated in March 2014 and May 2014 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015); Quartuccio, at 187. The Veteran was advised that it was ultimately his responsibility to give VA any evidence pertaining to the claim. The letters informed him that additional information or evidence was needed to support his claim, and asked him to send the information or evidence to VA. See Pelegrini II, at 120-121. The March 2014 letter also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Furthermore, even if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome in this case by the following: (1) based on the communications sent to the Veteran over the course of this appeal, the Veteran clearly has actual knowledge of the evidence the Veteran is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to the Veteran by VA, it is reasonable to expect that the Veteran understands what was needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) (stating that "no error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

In this case, the Veteran has been continuously represented by an experienced national service organization who has submitted argument in support of his claim. These arguments have referenced the applicable law and regulations necessary for a grant of service connection. Thus, the Board finds that the Veteran has actual knowledge as to the information and evidence necessary for him to prevail on his claim and is not prejudiced by a decision in this case. As such, a remand for additional notice would serve no useful purpose and would in no way benefit the Veteran. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (indicating that remands which would only result in unnecessarily imposing additional burdens on the VA with no benefit flowing to the Veteran are to be avoided).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records (STRs) and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. In May 2014, the RO requested that the Veteran submit more information related to the Veteran's unit and timeframes of the alleged exposure to Agent Orange. The Veteran did not reply, and the RO opined that there was not enough detail of information to submit a U.S. Army and Joint Services Records Research Center (JSRRC) request. The following month, the Veteran submitted a VCAA notice response indicating that he had no additional information to submit. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4)(i) (2015). 

The Board notes that the Veteran has not been afforded a VA examination with respect to his claim. However, as will be discussed below, the competent, credible, and probative evidence of record fails to demonstrate that the Veteran served in Vietnam during the Vietnam War, nor was he shown to have been exposed to herbicides while serving in Thailand. This is important as exposure to herbicides is the basis of his claim for service connection. As will be discussed below, there is no evidence of any complaints, treatment, findings, or diagnoses referable to diabetes mellitus during service. Additionally, the first evidence of a diagnosis of diabetes mellitus was sometime around 2013. Moreover, the Veteran has not alleged a continuity of diabetes mellitus symptomatology since service; rather, he has contended that he is entitled to presumptive service connection based on exposure to herbicides. As will be discussed further below the preponderance of the evidence is against showing that he was exposed to herbicides, to include Agent Orange, during service. Therefore, the Board finds that there is no indication that diabetes mellitus, or persistent or recurrent symptoms of such disease, may be associated with the Veteran's military service. Thus, a remand for examinations and/or opinions is not necessary to decide the claim. See 38 C.F.R. § 3.159 (c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006) (discussing circumstances when a VA examination is required).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Legal Criteria

Service connection for VA compensation purposes will be granted for a disability resulting from disease or personal injury incurred in the line of duty or for aggravation of a preexisting injury in the active military, naval or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet. App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table).

Diabetes mellitus is deemed to be a chronic disease under 38 C.F.R. § 3.309(a) and, as such, service connection may be granted if the evidence shows that the disease manifest to a degree of ten percent or more within one year from the date of separation from service. 38 C.F.R. § 3.307.

A recent decision of the U. S. Court of Appeals for the Federal Circuit (Federal Circuit Court), however, clarified that this notion of continuity of symptomatology since service under 38 C.F.R. § 3.303(b), which as mentioned is an alternative means of establishing the required nexus or linkage between current disability and service, only applies to conditions identified as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Alternatively, a "veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service." 38 U.S.C.A. § 1116(f) (West 2014); 38 C.F.R. § 3.307(a)(6)(iii). The presumption of herbicide exposure is warranted for service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii); see also Haas v. Nicholson, 20 Vet. App. 257 (2006), rev'd sub nom. Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008), cert. denied, 77 U.S.L.W. 3267 (Jan. 21, 2009) (No. 08-525). In order to establish qualifying "service in Vietnam," a veteran must demonstrate actual duty or visitation in the Republic of Vietnam to have qualifying service. 38 C.F.R. 
 § 3.307(a)(6)(iii); VAOPGCPREC 27-97. 

If a veteran was exposed to a herbicide agent during active military, naval, or air service, certain diseases, including diabetes mellitus shall be service connected if the requirements of 38 U.S.C.A. § 1116 and 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). The VA Secretary has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346 (1994); see also Notice, 61 Fed. Reg. 57586 -57589 (1996).

Additionally, VA has established a procedure for verifying exposure to herbicides in Thailand during the Vietnam Era. See the VA Adjudication Manual, M21-1MR, Part IV, Subpart ii, Chapter 2, Section C ("M21-1MR"). VA has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes as evidenced in a declassified Vietnam era Department of Defense document titled "Project CHECO Southeast Asia Report: Base Defense in Thailand." Special consideration of herbicide exposure on a facts-found or direct basis should be extended to those veterans whose duties placed them on or near the perimeters of Thailand military bases. This allows for presumptive service connection of the diseases associated with herbicide exposure. 

The majority of troops in Thailand during the Vietnam era were stationed at the Royal Thai Air Force Bases (RTAFB) of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by MOS (military occupational specialty), performance evaluations, or other credible evidence, then herbicide exposure should be acknowledged on a facts found or direct basis. However, this applies only during the Vietnam era, from February 28, 1961, to May 7, 1975. See M21-1MR, Part IV, Subpart ii, Chapter 2, Section C.10.(q).

The Board notes, notwithstanding the foregoing presumptive provisions, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that a claimant is not precluded from establishing service connection for a disease averred to be related to herbicide exposure, as long as there is proof of such direct causation. See Combee v. Brown, 34 F.3d 1039, 1043-1044 (Fed. Cir. 1994). See also Brock v. Brown, 10 Vet. App. 155, 160-61 (1997), vacated on other grounds (Fed. Cir. Dec. 15, 2000). In the absence of a presumptive basis to grant a claim, to establish a right to compensation for a present disability on a direct basis. Again, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In adjudicating these claims, the Board must assess the competency and credibility of the veteran. Washington v. Nicholson, 19 Vet. App. 362 (2005). Lay testimony is competent if it is limited to matters that the witness has actually observed and is within the realm of the witnesses' personal knowledge. Barr v. Nicholson, 21 Vet. App. 303 (2007), Layno v. Brown, 6 Vet. App. 465 (1994).

Factual Background and Analysis

The Veteran contends that his currently diagnosed diabetes mellitus is due to Agent Orange exposure during service. He contends that he was exposed to herbicides while working on the flight line in Ubon, Thailand from January 1965 to September 1966; or alternatively, during stopovers in Republic of Vietnam enroute to and from Thailand. He also maintains that he was exposed to Agent Orange from aircraft that flew over Vietnam. 

A review of the Veteran's service treatment records show no findings of diabetes mellitus or symptoms related to diabetes mellitus. Periodic urinalysis testing was negative throughout service. 

A review of the Veteran's service personnel records shows no service in Vietnam or evidence of stopovers in Vietnam. His service in Thailand at Ubon Air Base was noted. His military occupations were radar operator/aerospace control and warning systems technician. 

In the Veteran's June 2009 claim for service connection, he specifically denied any service in Vietnam. 

It appears that the Veteran was first diagnosed as having diabetes mellitus in 2013. A private treatment note, dated in July 2013, states that the Veteran has a recent diabetes mellitus diagnosis. 

In a March 2014 communication to VA, the Veteran reported that enroute to Thailand, he stopped ant Ton Son Knut Air Base in Vietnam. This was in January 1966. In 1970, he recalled returning to Thailand and passing through Vietnam again. He stated that he controlled aircraft flying missions over Cambodia and Vietnam. He questioned whether his diabetes mellitus may have started during service. 

Upon careful review of the evidence of record, the preponderance of the evidence is against finding that the Veteran served in-country in Vietnam, and is against any direct exposure to Agent Orange in Thailand.

In finding that the Veteran did not serve in Vietnam, and was thus not exposed to herbicide exposure in Vietnam, the Board also finds that he is not entitled to a presumption of herbicide exposure due to his service in Thailand. 

In that regard, the Veterans' Benefits Administration (VBA) Fast Letter 09-20 provides updated information concerning herbicide use in Thailand during the Vietnam era. Previous development procedures that VBA was using for purposes of developing information concerning possible Agent Orange exposure in Thailand was replaced by a memorandum for the record that was jointly prepared by the Compensation Service and the Department of Defense. Now, if a claimed herbicide exposure cannot be resolved based on the information contained in this memorandum, then follow-up inquiries are being sent to the Army and JSRRC.

This memorandum reports that tactical herbicides, such as Agent Orange, were used at the Pranburi Military Reservation from April to September 1964, but not near any U.S. military installation or Royal Thai Air Force Base. Other than the 1964 tests on the Pranburi Military Reservation, tactical herbicides were not used or stored in Thailand. See VBA Fast Letter 09-20 (May 6, 2009). This memorandum reflects that some Operation RANCH HAND aircrafts flew insecticide missions in Thailand from August 1963 to September 1963 and in October 1966. Although the 1966 missions involved the spraying of Malathion insecticide for "control of malaria carrying mosquitoes," these facts were noted as insufficient to establish tactical herbicide exposure for any Veteran based solely on service in Thailand. The memorandum further concedes that non-tactical, commercial herbicides were used within fenced perimeters at other times during the Vietnam War period. Therefore, if a Veteran's military occupational specialty or unit was one that regularly had contact with the base perimeter, there was a greater likelihood that the Veteran had been exposed to commercial pesticides. Security police units were known to have walked the perimeters, especially dog handlers. Id. 

In this case, it cannot be presumed that he was exposed to tactical herbicides while stationed in Thailand. Although the VBA Fast Letter noted above provides guidance on the extent of herbicide exposure outside Vietnam, such exposure is not presumed for any veteran and actual exposure must be demonstrated based on the facts found from the record. Unlike veterans who served in the Republic of Vietnam during the Vietnam era who are presumed to have been exposed, including those service members who only disembark from a ship for the day and place "boots on the ground" in Vietnam; the presumption of exposure to herbicides does not carry to those servicemen who service in Thailand during the Vietnam era.

The Veteran contends that his military occupational specialty caused him to be present at the perimeter of his military base. The Veteran was radar operator/aerospace control and warning systems technician and contends that his duties took him near the perimeters of the Ubon Thai base. The Board finds, however, that there is no documentation that the Veteran was indeed exposed to herbicides sprayed at the base perimeter. In light of the Veteran's statements in this case, and upon review of his service personnel records, the Board finds that the weight of the credible evidence is against a finding that he was exposed to commercial herbicides while stationed in Thailand. Thus, further verification with the JSRRC is not necessary and presumptive service connection for diabetes mellitus is not warranted on that basis. 

The Veteran's claim for diabetes mellitus is based entirely on his alleged exposure to Agent Orange. Though the Board finds the Veteran to be largely credible and sincere in his own belief that he was either exposed to Agent Orange in Thailand, there is simply no record of the Veteran's exposure at Ubon Air Base in Thailand. Consequently, the preponderance of the evidence is against a presumptive finding of service connection based on exposure to Agent Orange.

The Board finds that the Veteran's service personnel file is the most probative evidence of record as to whether he was exposed while serving in Thailand. Therefore, he cannot be presumed to have been exposed to herbicides in Thailand. The Veteran's service personnel records further demonstrate that he did not serve in the Republic of Vietnam, and the other probative evidence of record does not show that he was exposed to herbicides at Ubon base in Thailand, and he is therefore not entitled to the presumption that he was exposed to herbicide agents under 38 C.F.R. § 3.307(a)(6)(iii).

The Veteran has not contended that he personally sprayed Agent Orange or any other herbicidal agents while in Thailand, and the overwhelming evidence of record shows that the Veteran was not present in areas where Agent Orange or other herbicides may have been spread during the timeframe he alleges. Indeed, the Veteran had some exposure to the base perimeter at Ubon, but his MOS does not suggest that he walked the perimeter of the base on a regular basis like a dog handler or security police would. In fact, the Veteran referenced his work as being on the flight line. 

In regard to the Veteran's assertion that he was exposed to residuals herbicides on aircraft returning from Vietnam, there are no current medical studies of record that show harmful health effects from such secondary or remote herbicide contact that may have occurred. See BVA Fast Letter 09-20, with attached VA memorandum on Herbicide Use in Thailand during the Vietnam Era. The Board further finds that such an assertion is too speculative on its face to constitute credible evidence of actual exposure to herbicides.

The Board acknowledges the Veteran's sincere belief that he was directly exposed to Agent Orange while serving in Thailand, but finds that his personnel records, and other sources, significantly outweigh the statements made by the Veteran. As such, the preponderance of the evidence is against finding that the Veteran was exposed to herbicides, including Agent Orange, during service.

Moreover, the record fails to show that the Veteran manifested diabetes mellitus to a degree of 10 percent within the one year following his final service discharge in 1979. As noted above, the Veteran was first diagnosed as having diabetes mellitus around 2013. Therefore, presumptive service connection is not warranted for diabetes mellitus. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. However, the Board has also considered whether the Veteran is entitled to service connection for diabetes mellitus on a direct basis.

Finally, the Board notes that there are no findings attributed to diabetes mellitus in the service treatment records, nor is there any competent medical opinion attributing his diabetes mellitus to any incident of service. In reviewing the Veteran's argument, it does not appear that he is alleging continuity-of-symptomatology; the Board nonetheless notes that the Veteran is not competent to provide an alternate theory of causation. Such an allegation of causation is different from descriptions of continuity of symptomatology, which in many instances a Veteran is competent to provide. See 38 C.F.R. § 3.159(a)(2); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377, n.4 (lay persons not competent to diagnose cancer). Consequently, the preponderance of the evidence is against a finding of service connection on a direct basis. 

As the preponderance of the evidence is against this claim, the benefit-of-the-doubt doctrine does not apply, and the claim for service connection for diabetes mellitus must be denied. See Gilbert v. Derwinski, 1 Vet. App 49 (1990).


ORDER

Service connection for diabetes mellitus is denied.


____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs